## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DAVID T. WEBB, BEN FREEMAN,** | ) | |
| **and MICHAEL FREEMAN,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-1125-WEB** |
| | ) | |
| **WEST COAST LIFE INSURANCE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on defendant's "Motion for Medical Order." (Doc. 21). Plaintiffs oppose the motion. For the reasons set forth below, the motion shall be DENIED WITHOUT PREJUDICE.

### Background

This is a breach of contract action concerning a life insurance policy. Highly summarized, plaintiffs allege that they are the beneficiaries of a policy issued by defendant on the life of Diane Kelley in the amount of $300,000. Ms. Kelley applied for the policy on March 18, 2002 and died from cancer on October 9, 2002.[1] Plaintiffs allege that defendant

---

[1] For reasons unexplained, the policy was issued with an effective date of March 8, 2002.

refuses to pay the death benefits "without just cause or excuse."

Defendant counters that the policy is "null and void" because Kelley made material misrepresentations on her insurance application.  For example, Kelley answered "no" when asked whether she had ever been treated for or told she had "cancer, diabetes, epilepsy, heart disorder, high blood pressure, stroke, mental or nervous disorders, tumors, ulcers, or any disorder of bladder, kidneys, liver, or lungs."  Similarly, Kelley answered "no" when asked whether she suffered from any disease or received medical or surgical treatment *for any other condition within the last five years*.  Defendant contends that Kelley had in fact been seen by numerous doctors from August 2001 through March 2002 for rib cage and leg pain and that an MRI revealed "tumors and lesions."  Moreover, on March 14, 2002 (four days before her insurance application), Kelley and Daniel Webb (her husband) consulted with Dr. Pait who noted that plaintiff had undergone numerous radiological studies in recent months "that demonstrate suspicious areas of concern."  Defendant argues that it would not have issued the policy had it known of these and other medical examinations and tests when Kelley applied for life insurance.

### Motion for Order

Defendant forwarded a "proposed standard medical order" to plaintiffs which they refuse to sign.  Defendant now moves the court to approve the order.  In support of its motion, defendant argues: (1) Kelley's prior medical history is the primary issue in this case and (2)  the order is appropriate under "the laws of Kansas and applicable federal law,

including but not limited to Federal Rules of Civil Procedure 26 and 37 and HIPAA." Doc. 21, p. 2. Plaintiffs oppose the motion, arguing: (1) defendant, rather than plaintiffs placed Kelley's medical condition in issue, (2) Fed. R. Civ. P. 26 and 37 and HIPAA are not appropriate grounds for issuing such an order, (3) the proposed order is overly broad, and (4) the order allows for ex parte interviews of Kelley's medical providers.[2]

Plaintiffs' argument that Kelley's medical records are protected from disclosure because *defendant* asserted her condition as an issue in the case is rejected. The physician-patient privilege is set forth in K.S.A. § 60-427 and subsection (d) provides:

> There is no privilege under this section in an action in which the condition of the patient is an element *or factor* of the claim or defense of the patient or of any party claiming through or under the patient or claiming as a beneficiary or the patient through a contract to which the patient is or was a party. (Emphasis added)

Kelley's medical records are certainly a "factor" of plaintiffs' claim because the primary issue in this case is whether Kelley misrepresented her prior medical history in the application for insurance.[3] Equally important, plaintiffs waived the privilege by providing defendant with medical records prior to filing this lawsuit. See, e.g., Doc. 4, Exhibit 5.

Plaintiffs' objection to ex parte interviews of Kelley's treating physicians is similarly

---

[2]

None of plaintiffs' arguments are supported by any legal authority.

[3]

As noted above, plaintiffs allege in their complaint that defendant denied their claim for insurance benefits "without just cause or excuse." However, defendant had previously advised plaintiffs that Kelley's misrepresentation of her prior medical history was the reason the claim was denied. (Doc. 4, Exhibit 5, defendant's July 30, 2003 letter to Daniel Webb).

without merit.  The rule is well established in the District of Kansas that ex parte interviews are permissible when plaintiff's medical condition is an issue in the case.  See Colby v. Eli Lilly and Company, Case. No. 81-1542 (D. Kan. Dec. 15, 1982)(Judge Crow, unpublished); Clark v. Homrighous, 136 F.R.D. 186 (D. Kan. 1991)(Judge Theis affirming Magistrate Judge Reid); Bryant v. Hilst, 136 F.R.D. 487 (D. Kan. 1991)(Judge Saffels affirming Magistrate Judge Newman); Evertson v. Dalkon Shield Claimants Trust, Case No. 82-12001, 1993 WL 245972 (D. Kan. June 2, 1993)(Judge Belot); and Roberson v. HCA Health Services of Kansas, Inc., Case No. 94-1227, (D. Kan. November 17, 1994)(Magistrate Judge Humphreys, unpublished).[4]

Plaintiffs argue that the proposed order is overly broad because it is not limited to (1) a particular medical provider, (2) a relevant time period or (3) medical records related to metastatic cancer.  The argument that discovery should be limited to records relating to cancer is not persuasive because the issues in this case are not limited to cancer.  Rather, the issues are (1) whether Kelley made *any* material misrepresentations when responding to defendant's inquiries concerning her medical history and (2) whether the policy would have been issued had Kelley's true medical history been known to defendant.  With respect to the relevant time period, defendant agrees to limit its discovery to five years before Kelley's application.  Plaintiffs' objection that no medical provider is listed is more problematic and discussed in greater detail below.

---

[4]

A fact witness has discretion to decide whether to participate in an informal interview.

Defendant's proposed order directs the following entities to produce "any and all records" for inspection and reproduction:

> Educational Institutions, Employers Past and Present, All Hospitals, Clinics, Pharmacies, Physicians, Laboratories, Social Workers, Counselors, Psychologists, Psychiatrists, Therapists, Medical Institutions, Health Care Providers, Governmental Agencies (State and Federal) and Insurance Companies.

This court has approved similar ***agreed*** orders in the past under the theory that a plaintiff's agreement is essentially a release and consent to the disclosure of educational, employment, and medical records. Because such an order expedites the gathering of records that are discoverable through more cumbersome formal discovery requests, experienced litigators before this court regularly agree to such orders. However, in this case plaintiffs declined defendant's request for an agreed order. Accordingly, there is no executed "release and consent" to support an order directed to third-party record holders.

Notwithstanding plaintiffs' refusal to agree to the proposed order, defendant requests that the court approve the order pursuant to "Fed. R. Civ. P. 26 and 37 and HIPAA." Neither Rule 26 nor Rule 37 support the relief requested in defendant's motion.[5] However, HIPAA and its accompanying regulations *do* contemplate the disclosure of medical information in the context of judicial proceedings. Specifically, 45 C.F.R. § 164.512(e) provides for the

---

[5]

Neither Rule 26 nor 37 contemplate the issuance of the type of "omnibus" order proposed by defendant that directs unnamed third parties to turn over documents. Moreover, the procedure for record subpoenas under Rule 45 would be superfluous if defendant's contention were correct. The court rejects defendant's implied argument that the procedure for record subpoenas under Rule 45 is superfluous.

disclosure of medical information under the following circumstances:

> (1) Permitted disclosures.  A covered entity may disclose protected health information in the course of any judicial proceeding:

>> (i) In response to an order of a court or administrative tribunal, provided that the covered entity **_discloses only the protected health information expressly authorized by such order_**; or

>> (ii) In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:
>>> (A) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request; or
>>> (B) The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iv) of this section, from the party seeking the information that reasonable efforts have been made by such party to secure a qualified protective order that meets the requirements of paragraph (e)(1)(v) of this section.

45 C.F.R. § 164.512(e)(1)(i) & (ii) (emphasis added).[6]  Accordingly, a health care provider

can disclose medical information without violating HIPAA if served with (1) a court order

authorizing the disclosure of such information or, alternatively, (2) a formal discovery

request accompanied by certain required assurances and notices.

In this case defendant argues that it has elected to follow § 164.512(e)(1)(i) and

request a court order authorizing the disclosure of medical information.  The problem with

this argument is that the order proposed by defendant requests the production of "any and all

---

[6]

A "covered entity" is defined as:  (1) a health plan, (2) a health care clearinghouse, and (3) a health care provider.  45 C.F.R. § 160.103.

records" concerning Kelley, whether held by an educational institution, employer or medical provider.  Obviously, the proposed order is not limited to medical providers and medical records and is beyond any production contemplated by HIPAA regulations.  Accordingly, defendant's reliance on HIPAA to support its proposed order is not persuasive.

**IT IS THEREFORE ORDERED** that defendant's motion for an order **(Doc. 21)** is **DENIED WITHOUT PREJUDICE.**  As set forth above, the medical records are discoverable and the parties shall confer in good faith to determine whether an agreed order can be reached that is more narrowly tailored to the provisions of 45 C.F.R. § 164.512(e)(1)(i).  The parties shall confer by **September 17, 2007** and submit any agreed order by **September 21, 2007.**  Should the parties fail to reach an agreed order, defendant may renew its motion by **September 21, 2007** or seek discovery under the more traditional method of issuing record subpoenas.

**IT IS SO ORDERED.**

Dated at Wichita, Kansas this 10th day of September 2007.

S/ Karen M. Humphreys

_____
KAREN M. HUMPHREYS
United States Magistrate Judge